UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VICTORIA ANNE LEWANDOWSKI,

        Plaintiff,

v.

ANDREW SAUL, COMMISSIONER,

        Defendant.

**Hon. Hugh B. Scott**

**18CV930**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 21 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 23, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Victoria Lewandowski" or "plaintiff") filed an application for disability insurance benefits on February 12, 2014 [R. 15], and Supplemental Security Income benefits on March 3, 2014 [R. 15]. That application was denied initially. The plaintiff appeared before an

Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated August 11, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on June 27, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on August 21, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 10, 21), and plaintiff duly replied (Docket No. 22). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 25-year-old with a bachelor of arts degree, has no past relevant work [R. 34-35]. Plaintiff contends that she was disabled as of the onset date of August 31, 2002 [R. 15]. Plaintiff claims the following impairments deemed severe by the ALJ: cerebellar vascular accident ("CVA"), transient ischemic attack ("TIA"), migraine headaches, obesity, bilateral knee degenerative joint disease, right shoulder impingement syndrome, degenerative disc disease of the cervical and lumbar spine, asthma, allergic rhinitis, a depressive disorder, an anxiety disorder, a cognitive disorder [R. 18]. As for plaintiff's obesity, the ALJ found that plaintiff was 5'7" tall and weighed 282 to 300 pounds [R. 24, 54 (plaintiff's testimony, Jan. 10, 2017)], earlier weighing 236 pounds when examined by consultative examiner Dr. Hongbiao Liu in May 2014 [R. 442]. Plaintiff also claims a litany of other ailments (such as a history of strokes and concussions, GERD, osteoarthritis, fibromyalgia, colitis, hypertension) that the ALJ did not find were sufficiently documented in the record to reach the level of severe impairment [R. 18].

**MEDICAL AND VOCATIONAL EVIDENCE**

At Step Two for Listings 12.04 or 12.06, the ALJ evaluated whether "Paragraph B" criteria were met, looking at the four areas of functioning. The ALJ found that plaintiff had moderate limitations in each of the four areas. [R. 21-23.]

In May 2014, plaintiff was examined by consultative examiner, Dr. Liu [R. 440, 29]. After noting plaintiff's various surgeries and medical conditions up to that date [R. 440-41], Dr. Liu noted that plaintiff did not appear in acute distress, had normal gait, intact dexterity, and normal range of motion, full strength in upper extremities [R. 442-43]. Dr. Liu diagnosed plaintiff with anxiety and depression; history of stroke; history of asthma; history of fibromyalgia; chronic neck and low back pain; gastric reflux disease; and obesity [R. 443]. Dr. Liu opined that plaintiff has mild to moderate limitation for prolonged walking, bending, and kneeling [R. 443], stating that plaintiff should avoid dust and other irritants due to asthma [R. 443]. The ALJ later gave "very significant weight" to Dr. Liu's opinion due to his expertise, and the relative consistency of his opinion with the longitudinal medical record including plaintiff's good response to consistent medical treatment [R. 32].

At her initial hearing on January 10, 2017, plaintiff testified that she was limited by back issues, knee pain, hand and wrist pain, coordination problems, migraine headaches, bipolar disorder, depression, anxiety, and asthma [R. 24, 56-57, 60-62]. She had a stroke in 2003 that affected her left side [R. 24, 58]. She had a second stroke in 2004 [R. 24, 59]. She claimed that she could not work because she was unable to stand or sit for long periods of time [R. 24, 60]. She had a series of surgeries on her wrists, elbow, and left knee starting in 2010 through 2013 [R. 25].

3

The ALJ emphasized plaintiff's service as an assistant leader for Brownies in Girl Scouts [R. 25, 62-63].

Plaintiff had a supplemental hearing on July 7, 2017, in which she reported on medical procedures she had after the January 2017 hearing [R. 26, 96]. She had bilateral cataract surgery, with her vision improving [R. 26]. She had surgery on her right wrist tendons in March 2017 and her asthma symptoms increased during that time [R. 26]. Plaintiff changed her inhalers and that improved her asthma symptoms [R. 26]. She complained that her migraine headaches had gotten more painful and she became more sensitive to light and sounds [R. 26]. After her TIA, plaintiff was told to stop all medication except Cambia, which did not always work [R. 26]. She experienced two to three headaches per week [R. 26].

Two treating physicians rendered opinions that plaintiff contends support her claim of disability (Docket No. 10, Pl. Memo. at 33-36, 36-40). Dr. Jennifer McVige reported on October 4, 2016, that plaintiff's migraines did not improve despite multiple treatment methods [R. 877] (id. at 34), that she had flare ups for 15-20 days/month [R. 877, 2094]. On January 18, 2017 [R. 2094-98, 33], Dr. McVige stated that plaintiff's migraines render plaintiff unable to work due to flare ups at 15-20 per month [R. 2094, 2097] (id. at 25, 33-36). Bright lights, noise, and weather changes trigger headaches and they worsen due to bright lights and noise [R. 2095]. The ALJ gave reduced weight to the January 2017 opinion because it lacked a function-by-function assessment and did not address plaintiff's functioning during non-flare up periods and the effect of her ongoing headache treatment [R. 33].

Dr. Horacio Capote [R. 1969, 33] is plaintiff's only mental health treating source in the record. Dr. Capote found that plaintiff was "seriously limited" in most of the mental abilities

4

and aptitudes noted in the questionnaire [R. 1971]. He explained that plaintiff had suffered from chronic depression, anxiety, and has had two strokes and one TIA, with "these conditions have severely impaired [plaintiff's] memory and ability to function appropriately" [R. 1971]. The doctor opined that plaintiff was "unable to meet the demands and is also unable to interact with others on an appropriate level" [R. 1971]. Plaintiff argues that the ALJ erred in reducing weight of this opinion [R. 33] (id. at 36-40). The ALJ found that Dr. Capote's opinion was internally inconsistent, was inconsistent with the longitudinal medical evidence in record [R. 33]. The ALJ noted that Dr. Capote used the "seriously limited" category rather than the more restrictive category of being "unable to meet competitive standards" while writing separately the more extreme limitations than indicated in using "seriously limited" category [R. 33].

The ALJ found that plaintiff's impairments could be expected to produce the alleged symptoms, but the alleged intensity, persistence, and limiting effects of these symptoms were "not fully consistent with the medical evidence and other evidence in the record" [R. 27]. The ALJ viewed plaintiff's statements only as it so far as it was consistent with the medical record [R. 27]. The ALJ focused on plaintiff's conservative treatment of her various ailments and her positive response to these treatment modalities [R. 27, listing that plaintiff was treated with medication management, activity modification, home exercises, physical therapy, occipital nerve blocks, trigger point, epidural, and Botox injections, use of inhalers]. The ALJ also noted plaintiff's emergency room visits and specialists' treatments with neurologists, orthopedists, cardiologists, allergists, endocrinologists, and pain management practitioners [R. 27].

The ALJ found that plaintiff had a residual functional capacity to perform light work (that is lifting 20 pounds occasionally, 10 pounds frequently; standing and or walking for 6 hours in

5

an 8-hour workday, and sitting for 6 hours in a workday) [R. 23]. The ALJ noted the following limitations on light work that plaintiff can perform: Plaintiff must avoid concentrated exposure to extreme cold, heat, wetness, humidity, vibration, fumes, odors, gases, and poor ventilation, and must avoid exposure to hazardous machinery or unprotected heights. Plaintiff can bear moderate noise level and avoid bright, flashing lights. The ALJ found that plaintiff is frequently able to reach overhead with right dominant upper extremity (right arm), can occasionally push, pull, stoop, kneel, crawl, crouch, and climb ropes, scaffolds, ladders, and stairs. She can occasionally handle with her right arm, but frequently able to handle using both hands together. Plaintiff also is able to understand, carry out, and remember simple, routine tasks involving only simple work-related decisions, but not at a production-rate pace. Plaintiff is unable to perform work that involves multi-tasking, but she is able to tolerate occasional interaction with co-workers, supervisors, and the general public. Plaintiff is able to tolerate occasional changes in routine work settings, and she would be off-task no more than 10% of an 8-hour workday. [R. 23.]

Plaintiff has no past relevant work, serving as a part-time student assistant and pharmacy technician while in college and applying unsuccessfully for two jobs [R. 35, 55-56, 65], leaving the student assistant job due to mold in the office affecting her asthma [R. 56]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as a mailroom clerk (light work), stock checker (light), surveillance system monitor (sedentary work), bonder, semi-conductor (sedentary), or table worker (sedentary), since able to perform light or sedentary work [R. 36]. As a result, the ALJ held that plaintiff was not disabled [R. 36, 37].

6

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I. General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the

7

[Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ erred in accepting a single, stale medical opinion from Dr. Liu to support the finding that plaintiff was able to perform light (or at least sedentary) work (Docket No. 10, Pl. Memo. at 25-31). She also faults the ALJ for rejecting treating sources' opinions; of the six treating sources plaintiff points to the opinions of Drs. McVige (plaintiff's migraines) and Capote (plaintiff's mental health) (id. at 31-40) that the ALJ gave reduced weight [R. 33].

Defendant counters that plaintiff properly found that plaintiff received conservative treatment for her various ailments and could thus rely upon Dr. Liu's opinion (Docket No. 21, Def. Memo. at 21-22, 28-29). Reviewing each of plaintiff's ailments and limitations, defendant argues that the record supports conclusion that she was not disabled by any of them (id. at 22-25) and plaintiff's daily activities (including care for aging parents) indicated the absence of disability (id. at 25-27). Defendant refute the contention that Dr. Liu's opinion was stale merely because it was rendered three years before the hearing and it was consistent with the medical record (id. at 28), especially since the ALJ considered the subsequent medical procedures plaintiff incurred (id. at 28-29).

9

*Staleness and Medical Opinions*

Staleness invalidates a medical opinion where subsequent treatment notes indicate that a claimant's condition has deteriorated since the old opinion, see Gualtieri o/b/o M.J.G. v. Comm'r of Soc. Sec., No. 17CV821, 2019 WL 3497917, at *7 (W.D.N.Y. Aug. 1, 2019) (Vilardo, J.) (quoting Whitehurst v. Berryhill, No. 16CV1005, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018) (Telesca, J.)). Stale opinions do "not constitute substantial evidence to support an ALJ's findings," Majdandzic v. Comm'r of Soc. Sec., No. 17CV1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (Geraci, C.J.); Gualtieri, supra, 2019 WL 3497917, at *10.

Plaintiff condition worsened after Dr. Liu's May 2014 opinion without a reevaluation by Dr. Liu (or other consultant) noting the cumulative effect of plaintiff's impairments and treatment of her various ailments. Plaintiff's treatment notes for the various surgeries and ailments since May 2014 showed that plaintiff's condition significantly deteriorated. While plaintiff has had conservative treatments for her ailments, she has a variety of them, including those after May 2014.

Dr. McVige found in January 2017 that plaintiff had migraine 15-20 times a month [R. 2094]. While not expressly stating the functional limitations arising from this or stating her condition when not having a migraine, the frequency of bouts of migraines is equivalent to time off task (see Docket No. 10, Pl. Memo. at 35). Such a frequency of absence is indicative of disability or at least worthy of consideration upon remand.

Thus, plaintiff's motion on this ground (the consideration of Dr. Liu and Dr. McVige's opinions) is **granted**. As for the consideration of Dr. Capote's opinion, the doctor's response to the questionnaire is ambiguous. Instead of noting the more severe categories of plaintiff's

mental abilities and aptitudes, Dr. Capote notes in text after the survey more serious restrictions than the "seriously limited" suggests. With the remand for reconsideration of plaintiff's migraines and other physical limitations, the ALJ may seek further opinion from Dr. Capote on his mental assessment, to see whether the "seriously limited" assessment or the text explanation reflects plaintiff's mental condition.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 10) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 21) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

                                                  *s/Hugh B. Scott*
                                                  Hon. Hugh B. Scott
                                           United States Magistrate Judge

Buffalo, New York
January 8, 2020